# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIO CESAR MACHUCA,<br>Petitioner,<br>v.<br>WARDEN, CALIFORNIA CITY IMMIGRATION PROCESSING CENTER, et al.,<br>Respondents. | Case No. 1:26-cv-05119-KES-EPG-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS AND DIRECT RESPONDENTS TO PROVIDE PETITIONER WITH BOND HEARING |

Petitioner is a federal immigration detainee proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

For the reasons set forth herein, the undersigned recommends granting the petition for writ of habeas corpus on the construed claims challenging Petitioner's re-detention and the statutory authority for Petitioner's detention and directing Respondents to provide Petitioner with a bond hearing.

## I.

## BACKGROUND

Petitioner is a citizen of El Salvador who has resided in the United States for approximately twenty years. (ECF No. 1 at 3.[1]) According to the Form I-213 submitted by Respondents, on August 21, 2021, Petitioner filed an initial application for Temporary Protected

[1] Page numbers refer to the ECF pagination stamped at the top of the page.

Status ("TPS"), which was approved on June 12, 2003. However, Petitioner's initial application was withdrawn and his application to re-register for TPS was denied by U.S. Citizenship and Immigration Services ("USCIS") on August 8, 2012. Petitioner was issued a notice to appear on November 29, 2012. (ECF No. 6 at 6.)

On October 8, 2025, Petitioner was stopped during a routine traffic stop and taken into the custody of U.S. Immigration and Customs Enforcement ("ICE"). (ECF No. 1 at 3.) In March 2026, an immigration judge ("IJ") held a bond hearing but denied bond on jurisdictional grounds. (ECF No. 1 at 4.)

On July 6, 2026, Petitioner filed the instant petition for writ of habeas corpus in which Petitioner raises a prolonged detention due process claim. (ECF No. 1 at 4–7.) The Court construed the petition "as also challenging the statutory authority for Petitioner's detention." (ECF No. 4 at 1.) On July 17, 2026, Respondents filed response to the petition. (ECF No. 6.)

## II.

## DISCUSSION

Although the deadline for Petitioner to file a reply to Respondents' response has not yet passed, the undersigned finds that issuance of the findings and recommendation is appropriate.

### A. Statutory Basis of Petitioner's Detention

Respondents assert that Petitioner is "an 'applicant for admission' who is subject to mandatory detention" under 8 U.S.C. § 1225 and "does not possess a right to freedom from immigration detention in any form other than the form provided by Congress." (ECF No. 6 at 1, 2.) "The various legal arguments relied upon by Respondents to support this assertion [that Petitioner's detention is mandatory under 1225(b) while his removal proceedings are pending] have been rejected by this Court in other proceedings." J.E.H.G. v. Chestnut, No. 1:25-cv-01673-JLT SKO, 2025 WL 3523108, at *9 (E.D. Cal. Dec. 9, 2025). See Valencia v. Chestnut, No. 1:25-cv-01550 WBS JDP, 2025 WL 3205133, at *2 (E.D. Cal. Nov. 17, 2025) (noting that "[h]ere in the Eastern District of California, recent decisions have largely rejected the government's interpretation of Section 1225(b)(2) as applicable to all 'applicants for admission,'" recognizing "[o]ther district courts have also reached the result that Section

1226(a), not Section 1225(b)(2), provides the appropriate framework for noncitizens already residing in the United States," and collecting cases).

This Court will follow the majority approach in finding that "Respondents' proposed interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." Sharan S. v. Chestnut, No. 1:25-cv-01427-KES-SKO (HC), 2025 WL 3167826, at *5 (E.D. Cal. Nov. 12, 2025).

Based on the foregoing, the undersigned recommends finding that Petitioner is not detained pursuant to 8 U.S.C. § 1225(b), and thus, Petitioner is entitled to habeas relief on the construed claim challenging the statutory authority of Petitioner's detention.

**B. Due Process**

The petition challenges Petitioner's prolonged immigration detention on due process grounds. (ECF No. 1 at 4–7.) The Court also construes the petition as raising a procedural due process claim regarding Petitioner's re-detention. See United States v. Qazi, 975 F.3d 989, 992–93 (9th Cir. 2020) ("It is an entrenched principle that pro se filings however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers. We are specifically directed to construe pro se pleadings liberally. This duty applies equally to pro se motions and with special force to filings from pro se inmates." (internal quotation marks and citations omitted)).

"We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (internal citations omitted). The Court will address each step in turn.

1. Liberty Interest

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v.

Davis, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas at 690. In Morrissey v. Brewer, 408 U.S. 471 (1972), the Supreme Court addressed whether due process requires a parolee be afforded some opportunity to be heard prior to revocation of parole. 408 U.S. at 472. In examining "the nature of the interest of the parolee in his continued liberty," the Supreme Court stated:

> The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. . . . The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions.

Morrissey, 408 U.S. at 482. The Supreme Court found "that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others" and held that "the liberty is valuable and must be seen as within the protection of" due process. Morrissey, 408 U.S. at 482.

Relying on Morrissey, courts in this district have consistently held that noncitizens who have been released from immigration custody pending civil removal proceedings have a protected liberty interest in remaining out of immigration custody. See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); J.A.E.M. v. Wofford, No. 1:25-cv-01380-KES-HBK (HC), 2025 WL 3013377, at *3–6 (E.D. Cal. Oct. 27, 2025); J.C.L.A. v. Wofford, No. 1:25-cv-01310-KES-EPG (HC), 2025 WL 2959250, at *3–5 (E.D. Cal. Oct. 17, 2025); Qazi v. Albarran, No. 2:25-cv-02791-TLN-CSK, 2025 WL 3033713, at *4 (E.D. Cal. Oct. 10, 2025); Martinez Hernandez v. Andrews, No. 1:25-cv-01035 JLT HBK, 2025 WL 2495767, at *10 (E.D. Cal. Aug. 28, 2025); Yang v. Kaiser, No. 2:25-cv-02205-DAD-AC (HC), 2025 WL 2791778, at *8 (E.D. Cal. Aug. 20, 2025); Maklad v. Murray, No. 1:25-cv-00946 JLT SAB, 2025 WL 2299376, at *7–8 (E.D. Cal. Aug. 8, 2025).

Here, it is unclear whether Petitioner was previously in immigration detention and subsequently released or the government knowingly decided not to detain Petitioner after his TPS application was denied. This Court previously found that the government's knowing decision not to detain an individual creates a liberty interest in their continued release and finds instructive the reasoning of Boso v. Warden of the Golden State Annex Det. Facility, No. 1:26-cv-01790-KES-SAB-HC, 2026 WL 1174643 (E.D. Cal. Apr. 30, 2026), report and recommendation adopted, 2026 WL 1389432 (E.D. Cal. May 18, 2026). Boso states in pertinent part:

> To the extent that Petitioner has not previously been detained by immigration officials and released, the Court finds the reasoning of Kharitonova v. Albarran, No. 3:26-CV-01362-JSC, 2026 WL 531441 (N.D. Cal. Feb. 25, 2026), persuasive. Kharitonova concerned a noncitizen who entered the United States on a nonimmigrant visa in 2012, filed her application for asylum and withholding of removal within one year of her arrival, had her asylum case referred to the Executive Office for Immigration Review, which issued a Notice to Appear, resided continuously in the United States, attended all scheduled hearings, was preparing to appear for her merits hearing scheduled for December 22, 2026, and in February 2026 "was detained on the street in front of the home in San Francisco where she work[ed] as a full-time nanny." Id. at *1. The district court held that the "government's decision not to detain Petitioner 'when it processed her asylum application, took her biometrics, referred her asylum case to EOIR, and advised her to appear for multiple hearings over a period of years,' ... gave rise to 'a liberty interest on Petitioner's part that she would remain free unless she violated her conditions of release.' " Id. at *2 (citation omitted). The court rejected the "government's insistence Petitioner lacks a liberty interest because it never before sought to detain her" as "specious" and "unsupported by any legal authority" because "[a]lthough the government did not detain and then release her, it made a decision *not* to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained." Kharitonova, 2026 WL 531441, at *2. See also Villanueva-Montanez v. Lyons, No. 2:26-cv-00954-DAD-CKD, 2026 WL 797930, at *1 (E.D. Cal. Mar. 23, 2026) ("[T]he release (or decision not to detain) is 'based on an evaluation[,]' allows for 'a relatively normal life[,]' and as a result the parolee or petitioner 'relied on at least an implicit promise' that the parole or decision not to detain will be revoked only if he fails to live up to the applicable 'conditions.' " (first alteration added) (quoting Morrissey v. Brewer, 408 U.S. 471, 482 (1972))).
>
> Here, Petitioner entered the United States without inspection, but his DACA application was approved by USCIS "on May 29, 2024, deferring [Petitioner's] removal from the United States." (ECF No. 10-4 at 1.) Although on February 20, 2026, USCIS issued a notice

> of "its intent to terminate [Petitioner's] deferred action for childhood arrivals" due to his felony conviction, the Court recommends finding that Petitioner maintains a liberty interest in his continued release. See Anderson v. Chernut, No. 1:26-CV-01960-DAD-CKD, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026) (finding, in context of petitioner who was granted parole and whose DACA status was terminated due to a DUI conviction, "that the government's knowing decision not to detain an individual creates a liberty interest in their continued release" and "[e]ven though petitioner's parole authorization expired, petitioner maintains her liberty interest in continued release"); Rocha Ramirez v. Warden, No. 1:26-CV-02544-DAD-AC, 2026 WL 1078250, at *1 (E.D. Cal. Apr. 21, 2026) (applying Anderson where petitioner entered the United States in 2006 on a valid visa that expired in 2011 and petitioner's DACA grant expired in 2021); D.L.C. v. Wofford, No. 1:25-cv-01996-DC-JDP, 2026 WL 145646, at *4 (E.D. Cal. Jan. 20, 2026) ("[N]umerous courts in the Ninth Circuit have found that when a noncitizen is paroled under that section, his liberty interest does not expire along with his parole.") (collecting cases).

Boso, 2026 WL 1174643, at *3.

Whether Petitioner was previously in immigration detention and subsequently released or the government knowingly decided not to detain Petitioner after his TPS application was denied, the undersigned recommends finding that Petitioner has a protected liberty interest in remaining out of immigration custody. See Clene C.D. v. Robbins, No. 1:25-cv-01463-KES-SKO (HC), 2026 WL 84302 (E.D. Cal. Jan. 12, 2026); Rivas Velasquez v. Warden, No. 1:25-CV-1818 CSK P, 2026 WL 494475, at *6 (E.D. Cal. Feb. 23, 2026) ("This Court finds that petitioner's time out of custody, even after his TPS was denied a year before he was detained by ICE, gave rise to a constitutionally protected liberty interest.").

2. *Mathews* Test

In Mathews, the Supreme Court held that "identification of the specific dictates of due process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

With respect to the first factor, the Court finds that the private interest at issue is fundamental. The Ninth Circuit has recognized that it "is beyond dispute" an immigration detainee's "private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). Accordingly, the undersigned recommends finding that the first Mathews factor weighs in favor of Petitioner.

With respect to the second factor, "'the risk of an erroneous deprivation [of liberty] is high' where, as here, '[the petitioner] has not received any bond or custody redetermination hearing.'" J.A.E.M., 2025 WL 3013377, at *7 (alterations in original) (quoting A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 871334, at *5 (E.D. Cal. Mar. 19, 2025)). "[A]s there have been no procedural safeguards to determine if petitioner's re-detention is justified, 'the probable value of additional procedural safeguards, i.e., a bond hearing, is high.'" Sharan S. v. Chestnut, No. 1:25-cv-01427-KES-SKO (HC), 2025 WL 3167826, at *10 (E.D. Cal. Nov. 12, 2025) (quoting A.E., 2025 WL 1424382, at *5).

With respect to the third and final factor, "although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is 'low.'" J.A.E.M., 2025 WL 3013377, at *7 (citing Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe, 787 F. Supp. 3d at 1094). See Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) ("Although the Government has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal orders are promptly executed, the Government's interest in detaining Petitioner without providing an individualized bond hearing is low."). Courts generally have found that the cost of providing a custody hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a pre-deprivation hearing would be fiscally or administratively burdensome. See J.A.E.M., 2025 WL 3013377, at *7 ("In immigration court, custody hearings are routine and impose a 'minimal' cost." (citing Doe, 787 F. Supp. 3d at 1094)).

\\\

On balance, the Mathews factors show that Petitioner is entitled to notice and a bond hearing and "[t]hat hearing should have occurred before petitioner was re-detained." Carmen G.C. v. Robbins, No. 1:25-cv-01648-KES-HBK (HC), 2025 WL 3521304, at *7 (E.D. Cal. Dec. 8, 2025).

> "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty ...."). Courts typically require evidence of urgent concerns or an especially strong government interest to justify a post-deprivation hearing. *See Guillermo M. R.*, 2025 WL 1983677, at *9; *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53, 59–61 (1993) ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency." (internal quotations omitted)).

Carmen G.C., 2025 WL 3521304, at *7.

At such a pre-deprivation hearing, the government bears the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk such that re-detention is warranted. See Carmen G.C., 2025 WL 3521304, at *7 ("On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing where the government must prove that she is a flight risk or danger to the community by clear and convincing evidence."); J.E.H.G. v. Chestnut, No. 1:25-cv-01673-JLT SKO, 2025 WL 3523108, at *14 (E.D. Cal. Dec. 9, 2025) ("[T]he immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention.").

Based on the foregoing, Petitioner has demonstrated that he has a strong liberty interest in remaining out of custody, that the risk of erroneous deprivation will be meaningfully reduced by requiring notice and a hearing before a neutral decisionmaker, and that the governmental burden in providing such procedure is quite minimal. Accordingly, the undersigned recommends

granting the petition on the construed due process claim challenging Petitioner's re-detention.[2]

**C. Appropriate Relief**

Courts in this district have taken differing approaches to the relief granted to petitioners who have been denied bond hearings in violation of due process. In some cases, the immediate release of the petitioner has been ordered. See, e.g., Yurani Hortua v. Chestnut, No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 (E.D. Cal. Dec. 9, 2025) (ordering immediate release of petitioner who had been released from immigration detention on parole, was arrested for theft but the case was resolved with community service and did not result in a conviction, and was re-detained at a routine six-month check-in); Carmen G.C., 2025 WL 3521304 (ordering immediate release of petitioner who allegedly violated reporting requirements four times); Rocha Chavarria, 2025 WL 3533606 (ordering immediate release of petitioner who allegedly "incurred compliance violations" that were not identified and where respondents did not suggest the alleged violations were the reason for petitioner's re-detention).

In other cases, bond hearings have been ordered rather than immediate release. See, e.g., J.E.H.G., 2025 WL 3523108 (ordering bond hearing for petitioner who allegedly violated reporting requirements numerous times and was re-detained based on said violations); Paz Aguilera v. Albarran, No. 1:25-cv-01619 JLT SAB, 2025 WL 3485016 (E.D. Cal. Dec. 4, 2025) (ordering bond hearing for petitioner who allegedly violated reporting requirements one time and was re-detained based on said violation); Sharan S., 2025 WL 3167826 (ordering bond hearing for petitioner who allegedly violated reporting requirements eight times).

Here, Respondents assert that this "case is in the category of immigration habeas cases for which the Court has typically ordered a bond hearing" due to Petitioner's criminal history. (ECF No. 6 at 1.) "Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017). As it appears Petitioner's arrests and/or convictions in 2001, 2007, 2008, and 2011

---

[2] In light of this conclusion, the Court declines to address Petitioner's prolonged detention claim and alternative Zadvydas claim.

occurred before Petitioner's prior release from immigration custody,[3] the government previously concluded that these convictions did not render Petitioner a danger or a flight risk such that detention was required. In 2013, Petitioner was arrested for an expired driver's license, found guilty, and sentenced to one day of confinement. In 2018, Petitioner was arrested for permitting an unauthorized driver to operate a vehicle, convicted, and sentenced to one day of confinement. In 2024, Petitioner was arrested for driving under the influence, convicted, and sentenced to twelve months probation. (ECF No. 6 at 7, 21–26.) Accordingly, the undersigned recommends finding that a post-deprivation hearing is the appropriate remedy. See Manturano Cochachi v. Warden, California City Corr. Ctr., No. 1:26-cv-03174-KES-SAB (HC), 2026 WL 1153620 (E.D. Cal. Apr. 28, 2026) (ordering bond hearing for petitioner who was convicted of various traffic-related misdemeanors and infractions).

## III.

## RECOMMENDATION

Based on the foregoing, the undersigned HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus be GRANTED on the construed claims challenging Petitioner's re-detention and the statutory authority of Petitioner's detention;
2. Respondents be enjoined and restrained from continuing to detain Petitioner pursuant to 8 U.S.C. § 1225(b); and
3. Respondents be directed to provide Petitioner with a bond hearing before an immigration judge that complies with the requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011), at which
    a. "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," Singh, 638 F.3d at 1203, and
    b. the IJ should consider Petitioner's financial circumstances or alternative

[3] There is nothing in the record before the Court that sets forth the date Petitioner was previously released from immigration detention or the government knowingly decided not to detain Petitioner. However, DHS initiated removal proceedings by issuing an NTA on November 29, 2012, so the Court presumes the applicable date is November 29, 2012.

conditions of release in the event Petitioner is determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond. Hernandez v. Sessions, 872 F.3d 976, 1000 (9th Cir. 2017).

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 23, 2026**

/s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE